IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| JULIE FAIRCHILD | § | |
| | § | |
| V. | § | 1:06-CV-92 |
| | § | |
| LIBERTY INDEPENDENT | § | |
| SCHOOL DISTRICT et al. | § | |

### MEMORANDUM OPINION RE MOTIONS TO COMPEL

#### I. NATURE OF CASE

This action is brought under 42 U.S.C. § 1983.  Plaintiff, Julie Fairchild (Fairchild), is a former teacher's aide at Liberty Independent School District (LISD). While employed, Fairchild worked in a LISD special education "life skills classroom." Jessica Barrier Lanier (Lanier) was the certified teacher in charge of that classroom. Two other aides, Becky Leon and Randy Boothe, also worked under Lanier in that classroom.

Fairchild alleges that she was fired in retaliation for reporting and complaining to assistant principal, Tom Connelly, about Lanier's dereliction of duty.  Specifically, she reported that Lanier was not keeping special education students' prescription medicine locked away from them; Lanier was not following Individualized Education

Plans;[1] and that Lanier spent most of her day planning her own wedding or pursuing other duties as a cheerleader sponsor.

After LISD initially decided to terminate Fairchild, she made reports to state agencies wherein she alleged that Lanier physically abused students in the classroom on multiple occasions. After these reports, LISD convened a closed hearing to consider Fairchild's "level 3 grievance" which appealed the initial termination decision. Fairchild and her counsel attended and participated in that meeting. However, a portion of that meeting in which some testimony allegedly was received and final deliberations occurred, was closed to Fairchild.

Fairchild alleges that her termination violated her First Amendment rights of speech and petition. She alleges that LISD's decision to hold a closed meeting when hearing her grievance also violated her First Amendment rights. Finally, she alleges that LISD's decision to hear testimony and deliberate outside the presence of Fairchild and her counsel deprived her of an opportunity to hear and respond to charges against her. Specifically, Fairchild alleges she was not given access to records needed to prepare her response to those charges, in violation of her Fourteenth Amendment due process rights.

---

[1] The Individuals with Disabilities Education Act (IDEA) requires that schools provide to each disabled student a free, "appropriate" education by means of an individualized education program or plan (IEP). See 20 U.S.C. § 1414(d). The IEP is designed to enable the student to make progress in the general education curriculum. Id. at § 1414(d)(1)(A)(i)(II)(aa).

Defendants are LISD, Lanier, and six other individual employees of the school district.

## II. Proceedings

This action is assigned to Chief Judge Thad Heartfield for trial. Pending are plaintiff's "Motion to Compel Production of Tapes" (Docket No. 45) and plaintiff's "Motion to Compel Production of Documents" (Docket No. 51). By order of reference dated August 14, 2006, Judge Heartfield referred these two motions to the undersigned for hearing and determination. The undersigned held a hearing on these motions on November 9, 2006.

Fairchild seeks to compel production of audiotapes made of the grievance hearing when LISD made the final decision to terminate Fairchild. Fairchild alleges that this meeting was improperly closed, and that she is entitled to copies of the tapes under federal rules of evidence. Fairchild further seeks to compel production of documents in six other categories: 1) Fairchild's complaints to various state agencies, the defendants' responses to these complaints, and the outcome of these complaints, 2) Fairchild's grievance and termination, 3) prior complaints or allegations of first amendment violations made against LISD, 4) defendant Lanier's job performance, 5) the job performance of other classroom aides, and 6) the need for emergency medical services in the special education classroom.

LISD seeks to avoid production of both the tapes and the documents on the grounds of state privilege and relevancy. LISD asserts that the tapes are protected from disclosure by the Texas Open Meetings Act. See Tex. Gov't. Code Ann. § 551.104(c).[2] LISD asserts that the documents concerning job performance evaluations of Lanier and the other teacher's aides is made confidential under state law. See Tex. Educ. Code Ann. § 21.355.[3] LISD also asserts that many of the documents and the tapes contain information about minor students, and that this information is federally protected from disclosure.

### III. PRINCIPLES OF ANALYSIS

The words "disclosure" and "discovery" are terms of art in federal practice. Litigants are required to disclose voluntarily certain categories of information without awaiting a request therefor from opposing parties. Additional matters are obtained through more formal discovery procedures. The scope of discovery is limited to matters not privileged and "relevant to the claim or defense of any party." See Fed. R. Civ. P. 26(b)(1). Evidence sought through discovery need not be admissible but the discovery request must be reasonably calculated to lead to the discovery of admissible evidence. See Coughlin v. Lee, 946 F.2d 1152, 1158-59 (5th Cir. 1991).

---

[2] This section of the Texas code provides that a tape of a closed meeting is available for public inspection and copying only under a court order issued in a suit brought under the Texas Open Meetings Act.

[3] "A document evaluating the performance of a teacher or administrator is confidential."

Local Rule CV-26 (d) provides guidance to counsel for evaluating when a particular piece of information is relevant to the claim or defense of any party as follows:

(1) It includes information that would not support the disclosing parties' contentions;

(2) It includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties;

(3) It is information that is likely to have an influence on or affect the outcome of a claim or defense;

(4) It is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense; and

(5) It is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate or try a claim or defense.

Even relevant information is protected from discovery, however, when it is privileged. Federal Rule 26(b)(1). In federal causes of action, federal rules govern whether information and materials are protected by privilege. Federal Rule of Evidence 501 states "[t]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." State privileges apply automatically only in those cases where state law provides the rule of decision. See Fed.R.Evid. 501.

Notwithstanding Rule 501, Federal courts may recognize and apply state privileges in appropriate circumstances.  When determining whether to apply a state evidentiary standard, or to create a new federal privilege, courts must engage in a balancing test.  The proposed privilege should be tested by "balancing the policies behind the privilege against the policies favoring disclosure."  ACLU of Mississippi v. Finch, 638 F.2d 1336 (5th Cir. 1981).  This balancing, however, is weighted against the recognition of the state privilege.  First, "evidentiary privileges in litigation are not favored."  Herbert v. Lando, 441 U.S. 153 (1979).  Second, the Supreme Court instructs that "[w]hatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed for they are in derogation of the search for truth."  United States v. Nixon, 418 U.S. 683, 710 (1974).

In ACLU of Mississippi v. Finch, the court formulated the policy-balancing test into two distinct analytical inquiries:  First, does the fact that the courts of Texas would recognize the privilege itself create good reason for respecting the privilege?  Second, is the privilege intrinsically meritorious in the court's independent judgment?  See ACLU of Mississippi, 638 F.2d at 1343.

The first question almost always is answered in the negative.  "That the courts of a particular state would recognize a given privilege will not often of itself justify a federal court in applying that privilege."  Id. at 1344.  Courts should apply state

privileges when there is no substantial cost to federal substantive policy, but there is almost always such a cost, as privileges hinder the "special federal interest in seeking the truth." Id.  When federal questions or issues play a predominant role in the litigation, the federal interest is very strong. Id.

The second question involves four salient conditions: 1) whether communications originate in a confidence that they will not be disclosed, 2) whether confidentiality is essential to the full and satisfactory maintenance of the relation between the parties, 3) whether the relation is one which in the opinion of the community ought to be sedulously fostered, and 4) whether the injury that would inure to the relation by the disclosure of the communications is greater than the benefit thereby gained for the correct disposal of litigation.  See id.  An asserted state privilege should be recognized only if all four conditions are met.  See ACLU of Mississippi, 638 F.2d at 1344.[4]

### IV. APPLICATION AND DISCUSSION

*A.    Motion to Compel Tapes of LISD Board Meeting*

LISD represents to the court that no recordings were made of the portion of the August 16, 2005 meeting from which Fairchild and her counsel were excluded.

---

[4]    The Fifth Circuit stated that all four conditions must be present before a federal court will apply a state law evidentiary privilege.  In practice, many courts in the circuit engage in a general balancing test, weighing the good of protecting the communication with the harm incurred from concealment. See e.g. Smith v. Smith, 154 F.R.D. 661, 674-75 (N.D. Tex. 1994).

As there is no recording, there is nothing subject to discovery as to that portion of the meeting.

The only recording is from the period when Fairchild and her attorney were present. As to it, LISD claims that under Texas state law, it can disclose tapes or records made of closed sessions only under court order. See Tex. Gov't. Code Ann. § 551.104(b).[5] That court order, however, can be issued only in cases brought under the Texas Open Meetings Act. See Tex. Gov't Code Ann. § 551.104(c).[6]

Allowing LISD to shield these tapes from discovery harms the federal interest in the truth-seeking process. The federal interest in this case is particularly strong, as it involves allegations of violations of federally-protected constitutional rights. The first question then, does the state interest in the privilege alone provide reason for a federal court to recognize the privilege, must be answered in the negative.[7]

---

[5] Providing that a court may grant an order that parts of the tape be admitted as evidence, and may order that the governmental body make the tape available to the public.

[6] Providing that the tape of a closed meeting is available for public inspection and copying only under a court order issued in a suit brought under the Texas Open Meetings Act.

[7] For present purposes, the court assumes, however, without deciding, that the privileges claimed by LISD are recognized in Texas. It is not altogether clear that Texas courts *would* treat the relevant sections of Texas law as creating an evidentiary privilege. The statutes cited by the defendants involve open records and open meeting requirements. The provisions of the statutes rendering Lanier's performance evaluations "confidential" facially prohibit disclosure only through the public records process. The statute prohibiting release of the tapes authorizes release of the tapes only in cases brought under the Open Meetings Act.

The second question involves addressing the four enumerated conditions. First, although defendants may have had some limited expectation of privacy, at best, they only had an expectation that the tapes and their contents would not be released to the general public. There can have been no expectation that the contents of the communication would be kept from *Fairchild*, however, as Fairchild and her counsel were present and participants in the adversarial hearing.

The third, and fourth conditions are also not met. Even if the relationship between participants in the hearing is one that should be sedulously fostered, confidentiality is not essential to the full and satisfactory maintenance of the relation between the parties, and disclosure of the tapes to Fairchild will not cause any additional damage to the relationship among board members. Since Fairchild was present at the first part of the meeting, all of the allegations, complaints, and critiques were made in her presence. LISD cannot logically claim now that production of the tapes to Fairchild would harm the willingness of participants to make full and honest evaluations.

Under the applicable balancing test, this court cannot apply the state evidentiary privilege. This conclusion does not end the inquiry, however. As noted earlier, the court can compel discovery only of "relevant" information. The tapes, however, clearly are relevant to Fairchild's claims. They include discussions of the reasons for

Fairchild's termination, which may support or impugn the basis for her First Amendment retaliation and denial of free speech at a designated public forum claims.

Because the tapes are not privileged and are relevant, their production will be ordered. Entry of a suitable protective order will prevent public disclosure.

   B.   *Motion for Production of Documents*

Fairchild seeks production of documents in several categories. At the hearing on November 9, 2006, the parties agreed that some of the documents had already been produced. Moreover, some of the remaining disputed documents may not actually exist. Nevertheless, LISD contests Fairchild's demands based on relevance and privilege irrespective of whether the requested documents exist in fact.

The remaining categories of contested documents are: 1) Fairchild's complaints to various state agencies regarding Lanier's alleged physical abuse of students, 2) other First Amendment complaints against LISD and the individual defendants, 3) Lanier's job performance evaluations, 4) personnel records of two other teacher aides in the same life skills classroom, and 5) records regarding emergency medical services for life skills classroom students.

LISD opposes the requests on the grounds that Lanier's job performance (Item 3) documents are confidential under state law, and that the remaining documents

requested by Fairchild are either irrelevant or implicate privacy concerns regarding minor students.

        1.      <u>Documents concerning Fairchild's Complaints to various State Agencies</u>

Fairchild made official complaints against Lanier with the State Board of Educator Certification and the Texas Education Agency. She made these complaints *after* she was discharged. Fairchild now requests production of all documents produced by LISD (or its agents, employees, etc.) in response to these post-termination complaints.

LISD responds that the complaints made by Fairchild to the state agencies occurred only after Fairchild was fired. Therefore, they cannot be the basis of any claim for retaliatory discharge, and are therefore irrelevant.

LISD correctly asserts that speech occurring after an employee is discharged cannot form the basis for a claim of retaliatory discharge. <u>See</u> <u>Finch v. Fort Bend Indep. Sch. Dist.</u>, 333 F.3d 555, 564 (5th Cir. 2003). Nonetheless, the documents may still be relevant. First, defendants' responses to the post-termination complaints may contain references to the pre-termination complaints Fairchild made to assistant principal Connelly. Second, responses of the defendants to Fairchild's post-termination complaints may be relevant to the issue of pre-termination intent. If defendants reacted to the later complaints in a manner that would have violated Fairchild's rights

had she remained an employee, these reactions may be evidence of the defendants' intent in their reactions to the first complaints.[8] Conversely, if defendants reacted to these later complaints in a manner that *would not* have violated Fairchild's rights, those reactions may be evidence of the defendants' permissive or legitimate intent in their reactions to the first complaints.

        2.    <u>Documents concerning other Complaints against Defendants</u>

Fairchild seeks production of all complaints or petitions alleging other First Amendment violations filed against LISD, Mona Chadwick, Tom Connelly, Bruce Lacefield, and Frank Davis from July, 2001 to the present. LISD responds that these documents are immaterial to the question of whether LISD improperly terminated plaintiff. LISD further argues that evidence of prior bad acts is not admissible to prove the character of a person or to show conformity therewith.

LISD's argument ignores that part of the federal evidence rule providing that evidence of other bad acts or wrongs is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." <u>See</u> Fed. R. Evid. 404(b). Evidence of other First Amendment complaints or violations by defendants are relevant to Fairchild's First Amendment claims because prior

---

[8] Although evidence of other bad acts is not admissible to prove conformity therewith, it is admissible as proof of motive or intent. <u>See</u> Fed. R. Evid. 404(b). This rule applies equally to subsequent acts as it does prior, as "'intent may be inferred from subsequent as well as prior acts.'" <u>See</u> <u>Dial v. Travelers Indem. Co.</u>, 780 F.2d 520, 523 (5th Cir. 1986) <u>quoting</u> <u>United States v. DiZenzo</u>, 500 F.2d 263, 265 (4th Cir. 1974).

First Amendment violations may be admissible to prove defendants' knowledge, that is, whether defendants knew that similar conduct was a violation of First Amendment rights. Evidence of prior violations may also be admissible to show the intent of the defendants.[9]

### 3. Documents relating to Lanier's Job Performance

Fairchild seeks documents concerning job performance evaluations of Lanier, a defendant herein and the teacher in whose classroom Fairchild formerly worked. Fairchild also seeks production of documents relating to LISD's subsequent decision to transfer Lanier to a different school. LISD objects on the ground that its later decision to transfer Lanier is irrelevant to its earlier decision to terminate Fairchild.

At the November 9 hearing, the parties informed the court that Lanier already has produced many of these documents. The only documents still at issue, if any, are informal notes possibly made and retained by LISD administrative staff in preparation for Lanier's performance evaluations, and any documents relating to Lanier's transfers.

---

[9] Evidence of mere allegations of similar bad acts is not automatically admissible. Even if the trial judge determines that the evidence is relevant to defendants' knowledge or intent, the evidence may be excluded under Federal Rule of Evidence 403 if the judge concludes that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, undue delay, waste of time, or needless presentation of cumulative evidence.

LISD argues that the documents relating to Lanier's performance evaluations are protected by state law privilege under Tex. Educ. Code Ann. § 21.355.[10] As discussed earlier, however, a state law privilege is not determinative of the issue of privilege in a federal cause of action brought in federal court. The <u>ACLU of Mississippi v. Finch</u> policy-balancing test determines whether the state privilege will be applied.

Allowing LISD to shield these documents from discovery harms the federal interest in the truth-seeking process. The federal interest in this case is particularly strong, as it involves allegations of violations of federally-protected constitutional rights. The first <u>ACLU of Mississippi v. Finch</u> question, therefore, must be answered in the negative.

The second question involves determining whether the four requisite conditions exist. As to the first, notes made by Lanier's supervisors regarding her performance evaluations likely were made with the expectation that they would remain private, and probably were intended only for personal use, not for dissemination. Regarding the second, confidentiality also probably played a role in the full and satisfactory maintenance of the relationship between Lanier's supervisors and Lanier. Had supervisors known that notes made in connection with performance evaluations

---

[10] <u>See</u> <u>supra</u> note 3.

might later be subject to a discovery order, they might not have been made at all, or might not have been made with honesty and completeness.

The third and fourth conditions, however, do not exist in favor of recognizing the privilege. The community has an interest in promoting full, complete, and honest assessments of its teachers. LISD does not provide, and the court is unable to find, case law supporting federal recognition of an evidentiary privilege for employee evaluations. In a similar situation, however, the Supreme Court rejected a privilege for academic peer review boards, reasoning that although the confidential nature of the proceeding makes the review process more effective, that interest could not overcome the interest in protecting employees from unlawful discrimination. See Univ. of Pennsylvania v. EEOC, 493 U.S. 182, 193 (1990).

Finally, the documents sought by Fairchild are relevant. Informal notes from Lanier's performance evaluations and documents concerning her transfer to other schools may show whether LISD desired to protect Lanier at the expense of Fairchild and the other aides. They also might shed light on whether there was a factual basis for Fairchild's complaints against Lanier.[11] Consequently, these documents, relevant, and not protected by privilege, are subject to discovery. Lingering privacy concerns can be preserved by a protective order limiting further disclosure of the documents.

---

[11] Fairchild's motivations in attacking Lanier may not have been purely altruistic or objectively reasonable. Fairchild had a child in LISD's special education programs, and her subjective bias might have colored her judgment regarding Lanier.

      4.      <u>Documents concerning Other Teacher Aides in the Same Classroom</u>

Fairchild seeks production of several different types of employment documents involving two other aides in the same classroom. All, including Fairchild, were discharged on the same date. The other two were reinstated, while Fairchild was not. Fairchild asserts that these documents go to the motive of LISD in terminating her.

Fairchild seeks: 1) documents relating to allegations made by one of the aides against Lanier, 2) documents concerning work performance of the other aides, and 3) documents related to reinstatement of the other two aides. LISD objects to the production of any of these documents on relevancy grounds.

Defendants claim that unlike Fairchild, the other two aides were not directly employed by LISD, and therefore would not be terminated by LISD. Defendants acknowledge, however, that the other aides were told by the principal at the school that they would not be returning to that campus. The other aides were later either returned to the original campus, or to positions at other LISD schools. Fairchild was the only aide not given a position the following year.

These documents are relevant. Fairchild's claim is based on her allegation that she was fired because she made complaints about Lanier. Documents relating to two other similarly situated aides could provide evidence as to whether LISD had retaliatory motive.

Production of the documents will be ordered.  Again, privacy issues regarding the two other aides can be guarded by a protective order.

### 5.     Documents regarding Emergency Medical Services

Fairchild requests production of all documents reflecting emergency medical services required for any child in the life skills classroom during the 2004-05 school year.  Fairchild alleges that on at least one occasion, emergency services had to be called to the classroom because Lanier overdosed a student on anti-seizure medication.  Fairchild argues that these documents are relevant because they will substantiate her claims that Lanier was abusing or neglecting students in the classroom.

LISD argues, that production of these documents will invade the privacy of the minor students involved in the incidents, and that there are certain steps under federal law[12] that LISD must take before releasing the documents.

Evidence of medical emergencies and Lanier's role in them is relevant to whether Fairchild's complaints were fact based.  Privacy of the minor students is a concern, but can be guarded through the entry of a protective order, coupled with court approved notices of opportunity to object sent to the students' parents prior to production.

---

[12]     The Family Educational Rights and Privacy Act prevents schools receiving federal funds from releasing student records without prior parental consent under most circumstances.  See 20 U.S.C. § 1232g(b) (2000 & Supp. 2006).  Records can be released without prior parental consent in compliance with court orders.  See 34 C.F.R. § 99.31(a)(9)(i).  The school can release the information only if it first makes reasonable efforts to notify the parents or student of the order, and the student or parents has the opportunity to seek protective action.  See 34 C.F.R. § 99.31(a)(9)(ii).

## IV.  Conclusion

All information sought by Fairchild in the pending motions is relevant to her claims.  None of the purported state evidentiary privileges meets the test for applicability in a federal cause of action in federal court.  Many of the communications were, however, undertaken with an expectation that Texas law would keep them private, or at least prevent their disclosure to the public at large.  Several other documents involve minor students who are not party to this case.  The court is mindful of these concerns.  Federal law requires defendants to disclose these communications and documents to further the truth seeking process.  Meeting this end, however, does not require that defendants make these communications and documents open for the world to see.  Although the defendants must produce the documents and tapes, the court will enter a protective order allowing redaction of identifying information regarding minor students, and allowing defendants to designate documents and communications as confidential.  Access and use of these materials will be limited to the conditions in the order.

SIGNED this __11__ day of December, 2006.

_Earl S. Hines_
Earl S. Hines
United States Magistrate Judge